**JASON WRIGHT, OSB NO. 062168**
jason@wrightlawpdx.com
WRIGHT LAW PDX
1500 SE 1st Avenue, Suite 730
Portland, OR 97201
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **HALLMARK SPECIALTY INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**SENTIA WELLNESS, INC.**<br><br>Defendant. | Case No. TBD<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Hallmark Specialty Insurance Company ("Hallmark"), for its Complaint for Declaratory Judgment, states as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage dispute in which Hallmark seeks a declaration that Sentia Wellness, Inc. ("Sentia") is not entitled to coverage under a first excess insurance policy Hallmark issued to Sentia (the "Hallmark Policy") for three underlying matters pending against Sentia and its directors and officers (the "Reported Matters").

2. The Reported Matters arise from Cura Partners, Inc.'s ("Cura Partners") spinoff of its CBD business, which had previously existed as a Cura Partners' subsidiary named Cura

Wellness, LLC ("Cura Wellness"), into Sentia as a standalone company.

3. The Hallmark Policy has a broad exclusion (the "Prior Acts Exclusion") providing that Hallmark will "not be liable to make any payment for **Loss** in connection with any **Claim**(s) directly or indirectly related to, based upon, attributable to or arising out of, in whole or in part, including the prosecution, settlement, disposition, resolution or defense of any actual or alleged **Wrongful Act**(s)" occurring prior to May 15, 2019. [1]

4. The Reported Matters all have their genesis in allegations that Sentia's directors and officers made misrepresentations in an effort to solicit investors to purchase debentures issued by Sentia in connection with the spinoff, conduct which substantially took place before May 15, 2019.

5. Because Sentia seeks coverage for **Loss** in connection with a **Claim** that is "directly or indirectly related to, based upon, attributable to or arising out of, in whole or in part" **Wrongful Acts** that took place before May 15, 2019, the Hallmark Policy's unambiguous Prior Acts Exclusion precludes coverage for the Reported Matters.

## PARTIES

6. Hallmark is an insurance company organized under the laws of the State of Oklahoma with its principal place of business in Dallas, Texas.

7. Sentia is a corporation organized under the laws of the State of Delaware with its principal place of business in Portland, Oregon.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 2201, and 2202, as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Hallmark seeks declaratory relief with respect to a case of actual controversy within this Court's jurisdiction.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and

---

[1] Terms in bold are defined in the Hallmark Policy and/or the underlying primary policy to which the Hallmark Policy follows form, as further described below.

Page 2 – COMPLAINT FOR DECLARATORY JUDGMENT

**WRIGHT LAW PDX**
1500 SW 1st Avenue, Suite 730
Portland, OR 97201

(2), in that Defendant is a resident within this judicial district and a substantial part of the events or omissions giving rise to this action occurred within this district.

## THE SENTIA POLICIES

10. Crum & Forster Specialty Insurance Company issued a Private Company Platinum Protection Policy No. PCF-100603 to Sentia for the **Policy Period** of May 15, 2020 to September 30, 2021 (the "Crum & Forster Policy"). A true and accurate copy of the Crum & Forester Policy is attached hereto as **Exhibit 1**.

11. The Crum & Forster Policy went into run-off effective September 7, 2021 through September 7, 2023. (*Id.* at pg. 46 of 47).

12. Hallmark issued an excess policy to Sentia bearing Policy No. 74PV000589-1 for the **Policy Period** of May 15, 2020 to September 30, 2021 (the "Hallmark Policy"). Like the Crum & Forster Policy, the Hallmark Policy went into run-off effective September 7, 2021 through September 7, 2023. A true and accurate copy of the Hallmark Policy is attached hereto as **Exhibit 2**.

13. Subject to its terms, conditions, endorsements, and provisions, the Hallmark Policy generally follows-form to the Crum & Forster Policy, unless otherwise stated therein.

14. Subject to its terms, conditions, and provisions, the Crum & Forster Policy, to which the Hallmark Policy follows-form, provides two types of coverage for an **Insured Organization**, as follows:

> **Insuring Clause (B): Individual Indemnified Liability Coverage**
>
> The Insurer shall pay, on behalf of an **Insured Organization, Loss** on account of a **Claim** first made against an **Insured Person** during the **Policy Period**, or Extended Reporting Period if applicable, to the extent the **Insured Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.
>
> **Insuring Clause (C): Entity Liability Coverage**
>
> The Insurer shall pay, on behalf of an **Insured Organization, Loss** on account of a **Claim** first made against the **Insured Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

(Ex. 1 at pg. 17 of 47).

Page 3 – COMPLAINT FOR DECLARATORY JUDGMENT

15. **Claim** means, in relevant part, "a civil proceeding commenced by the service of a complaint or similar pleading…[or] an arbitration, mediation or alternative dispute resolution proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document[.]" (*Id.* at pgs. 17-18 of 47).

16. The Crum & Forster Policy defines an **Insured Person** as "any **Executive** or **Employee** of an **Insured Organization** acting either in his or her capacity as such or in an **Outside Capacity**." (*Id.* at pg. 19 of 47).

17. **Employee** means "any natural person whose labor or service was, is or will be engaged and directed by the **Insured Organization**, including full-time, part-time, seasonal, leased and temporary employees, interns or volunteers. **Employee** shall not include **Independent Contractor**." (*Id.* at pg. 6 of 47).

18. **Executive** is defined as any natural person who was, is or will be:

(A) a duly elected or appointed director, officer, in-house general counsel or member of an Advisory Board of any **Insured Organization** incorporated in the United States of America;

(B) a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; or (2) in-house general counsel of any **Insured Organization** formed as a limited liability company in the United States of America; or

(C) a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Insured Organization** incorporated, formed or organized anywhere in the world.

(*Id.*).

19. **Insured Organization** is defined in the Crum & Forster Policy to mean "the **Named Insured** (i.e., Sentia) and any **Subsidiary**. **Insured Organization** shall also mean any such entity as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country." (*Id.* at pg. 7 of 47).

20. **Wrongful Act** is defined to mean:

any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:

(A) for purposes of coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, and (B), Individual Indemnified Liability Coverage, any **Insured Person** while acting in his or her capacity as such or any matter claimed against any **Insured Person** solely by reason of his or her status as such; or

(B) for purposes of coverage under Insuring Clause (C), Entity Liability Coverage, any **Insured Organization**.

(*Id.* at pg. 20 of 47).

21. Section IV. of the Crum & Forster Policy General Terms and Conditions provides in relevant part that "[a]ll **Related Claims** shall be deemed a single **Claim** made in the **Policy Period** in which the earliest of such **Related Claims** was first made or first deemed to have been made in accordance with Section VI. Reporting (the "Earliest Related Claim"). (*Id.* at pg. 8 of 47).

22. **Related Claims** means "all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related acts, circumstances, situations, transactions or events or the same or related series of facts circumstances, situations, transactions or events." (*Id.* at pg. 7 of 47).

23. The Hallmark Policy's Prior Acts Exclusion provides:

| Prior Acts Date: | May 15, 2019 |

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**(s) directly or indirectly related to, based upon, attributable to or arising out of, in whole or in part, including the prosecution, settlement, disposition, resolution or defense of any actual or alleged **Wrongful Act**(s) which occurred prior to the date displayed above as the Prior Acts Date or after the end of the **Policy Period**. This policy only provides coverage for **Loss** arising from **Claim**(s) for an actual or alleged **Wrongful Act**(s) occurring on or after the date displayed above as the Prior Acts Date and prior to the end of the Policy Period and otherwise covered by this policy. **Loss**(es) arising out of the same or **Related Wrongful Act**(s) shall be deemed to arise from the first such same or **Related Wrongful Act**(s).

Page 5 – COMPLAINT FOR DECLARATORY JUDGMENT

The terms "**Wrongful Act**" and "**Related Wrongful Act**" have the meanings attributed to them, or to comparable terms, in the **Followed Policy**.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

(the "Prior Acts Exclusion"). (Ex. 2 at pg. 16 of 21).

## FACTUAL ALLEGATIONS

24. The following facts are derived from the pleadings filed in the Reported Matters, which are attached to this Complaint as **Exhibits 3 through 5**.

### I.     The Sentia Spinoff and Curaleaf Acquisition of Cura Partners

25. Nitin Khanna ("Khanna") founded Cura Partners in 2015 as a cannabis company in Portland, Oregon.

26. In 2019, Cura Partners decided to separate its THC (tetrahydrocannabinol) business from its CBD (cannabidiol) business, which was Cura Wellness, LLC, a wholly owned subsidiary of Cura Partners. The separation of Cura Partners from Cura Wellness ultimately resulted in Curaleaf Holdings, Inc.'s ("Curaleaf") agreement to acquire Cura Partners, with the exception of its CBD product line, in the largest cannabis merger in history, and the spinoff of Cura Wellness into a separate company – Sentia.

27. Khanna began informing prior Cura Partners' investors about a plan to separate Cura Partners' THC and CBD businesses in January 2019.

28. In March 2019, to effectuate the plan, Khanna began officially soliciting a new round of debenture funding from prior Cura Partners investors.

29. On April 15, 2019, to effectuate the planned spinoff, Sentia was formed as a Delaware corporation. A true and accurate copy of Sentia's date of incorporation available on the State of Delaware's Department of State: Division of Corporations website is attached hereto as **Exhibit 6**.

30. On April 19, 2019, Measure 8 Ventures, LP purchased $25 million in Sentia debentures.

31. On April 23, 2019, Khanna emailed investors with the official debenture funding sale, and Khanna outlined the plan to sell Cura Partners' THC business to Curaleaf and spinoff Cura Wellness into Sentia.

32. On May 15, 2019, Sentia and Cura Wellness entered into a "sale and purchase of business assets agreement," whereby Sentia purchased inventory, fixed assets and other certain assets and liabilities from Cura Wellness for $12.66 million, completing the spin off. A true and accurate copy of Curaleaf's Form 51-102F4 Business Acquisition Report is attached hereto as **Exhibit 7**.

II. The Reported Matters

   A. The Measure 8 Lawsuit

33. On January 6, 2022, Measure 8 Ventures, LP, Gron Ventures Fund I, LP, Zola Global Investors Ltd., Anson Advisors, Inc. on behalf of Anson East Master Fund LPO, AC Anson Investments Ltd., Anson Investments Master Fund LP and Anson Opportunities Master Fund, LP, Serendipity SPC – Trimble Fund SP on behalf of Emerald Spur Limited, Lapid US Investments LLP, and Hadron Healthcare and Consumer Special Opportunities Master Fund (the "Measure 8 Parties") filed a lawsuit in the Circuit Court for the State of Oregon under Case No. 22CV00946 (the "Measure 8 Lawsuit") against certain Sentia directors and officers, Khanna, Karan Khanna, Angelo Lombardi, Sam Knapp, and Nicholas J. Slinde, and two outside attorneys for Sentia, Benjamin C. Stoller, and Allan Goodman (the "Underlying Defendants").

34. The Measure 8 Lawsuit alleged that the Underlying Defendants committed securities fraud in violation of Oregon securities laws by making materially misleading statements and omissions of fact to solicit and induce the Measure 8 Parties to purchase over $74 million in Sentia debentures, as well as that Khanna breached his fiduciary duties. A true and correct copy of the complaint filed in the Measure 8 Lawsuit is attached hereto as **Exhibit 3**.

35. The Measure 8 Parties allege that Khanna made representations starting in January 2019 to induce them to purchase Sentia debentures that were false, including various unattainable

financial projections and statements that Goldman Sachs would be involved in Sentia's private placement or initial public offering. After these discoveries, the Measure 8 Parties requested the return of remaining funds and the dissolution of Sentia. However, they allege that certain Sentia assets were sold to a non-viable company.

36. Sentia submitted the Measure 8 Lawsuit to Hallmark for coverage on January 14, 2022.

37. On September 27, 2022, the court overseeing the Measure 8 Lawsuit dismissed the Oregon state law securities claims based on forum selection and/or arbitration clauses in the Measure 8 Parties' debenture agreements.

38. The breach of fiduciary claim against Khanna is the only cause of action remaining in the Measure 8 Lawsuit.

### B. The Measure 8 Arbitration

39. After the court in the Measure 8 Lawsuit dismissed the Oregon state law securities claims, on November 15, 2022, the Measure 8 Parties filed a demand for arbitration against the same Underlying Defendants, and added an additional Sentia director defendant, David Thompson (the "Measure 8 Arbitration Demand").

40. The Measure 8 Arbitration Demand alleges securities fraud in violation of Oregon and federal securities law claims arising out of the alleged untrue statements and misleading omissions of material facts made by the Underlying Defendants and Thompson to solicit and induce the Measure 8 Parties to purchase over $74 million in debentures in Sentia.

41. Sentia submitted the Measure 8 Arbitration Demand to Hallmark for coverage on November 21, 2022.

42. On December 7, 2022, the Underlying Defendants filed a Petition to Stay Arbitration in connection with the Measure 8 Arbitration Demand in the Supreme Court of the State of New York, Index No. 654680/2022. A true and correct copy of the Petition to Stay Arbitration with exhibits is attached hereto as **Exhibit 4**.

43. The Measure 8 Arbitration Demand is attached as Exhibit F to the Petition to Stay Arbitration. Ex. 4 at pgs. 259-326 of 335.

44. On December 8, 2022, the court stayed the Measure 8 Arbitration on an interim basis pending ruling on the Petition to Stay Arbitration.

*C. The Measure 8 Counterclaims*

45. On May 16, 2022, Sentia filed an affirmative lawsuit against Boris Jordan (former Sentia director and Executive Chairman of Curaleaf and Founder of Measure 8), the Measure 8 Parties, Aterian Inc., Alliance Global Partners LLC, Sunny Puri (former Sentia director), Juan Martinez, Peter Clateman, Wilder Ramsey, Gregory Crowe, Igor Gimelshtein, Tarik Ouass, Andrea Oriani, Marco D'Attansio, and Afzal Hasan in the Circuit Court for the State of Oregon under Case No. 22CV16152 alleging the defendants engaged in a "pattern of self-dealing and conflicts [that] ultimately enriched the debt holders but destroyed $150 million in shareholder value."

46. On September 26, 2022 the Measure 8 Parties filed an Amended Answer and Counterclaims against Sentia alleging that the Measure 8 Parties purchased over $74 million of Sentia's debentures in reliance on Sentia executives' untrue statements and misleading omissions of material fact (the "Measure 8 Counterclaims"). A true and correct copy of the Measure 8 Counterclaims is attached hereto as **Exhibit 5**.

47. The Measure 8 Counterclaims contain substantially similar allegations as in the Measure 8 Lawsuit and assert causes of action for breach of contract, breach of fiduciary duty, fraudulent transfer, and request for receiver against Sentia.

48. Sentia first submitted the Measure 8 Counterclaims to Hallmark for coverage on December 13, 2022.

**INSURANCE COVERAGE DISPUTE**

49. Sentia seeks insurance coverage from Hallmark for the Reported Matters under the Hallmark Policy.

50. Hallmark disputes that coverage exists for the Reported Matters under the Hallmark Policy.

51. An actual, present, and bona fide controversy exists between Hallmark, on the one hand, and Sentia, on the other hand, with respect to whether there is insurance coverage for the Reported Matters under the Hallmark Policy.

52. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Hallmark Policy.

53. Upon information and belief, Sentia is indemnifying the individuals named as defendants in the Reported Matters and, as a result, those individuals are not necessary parties to this action.

54. Sentia filed suit in Oregon state court against Crum & Forster regarding coverage for the Measure 8 Parties' Lawsuit under the Crum & Forster Policy.

55. Despite having sought coverage from Hallmark under the Hallmark Policy, Sentia did not include Hallmark in that lawsuit.

## COUNT I – DECLARATORY JUDGMENT

### (Prior Acts Exclusion)

56. Hallmark incorporates by reference each and every allegation set forth in paragraphs 1 through 55 as though set forth fully herein.

57. The Reported Matters allege, among other things, that Sentia, the Underlying Defendants, and Thompson made material misrepresentations when soliciting a round of debenture funding to finance Sentia's operations beginning in January 2019.

58. The Reported Matters constitute a single **Claim** under the Hallmark Policy.

59. The Reported Matters are a "**Claim** directly or indirectly related to, based upon, attributable to or arising out of, in whole or in part, including the prosecution, settlement, disposition, resolution or defense of any actual or alleged **Wrongful Act**(s) which occurred prior to [May 15, 2019]."

60. As a result, the Prior Acts Exclusion bars coverage for the Reported Matters under the Hallmark Policy.

61. An actual, present, and justiciable controversy exists between Hallmark and Sentia regarding the parties' rights and obligations under the Hallmark Policy with respect to the Reported Matters.

62. The entry of a declaratory judgment with respect to whether the Prior Acts Exclusion bars coverage for the Reported Matters under the Hallmark Policy is necessary and would be effective to resolve the controversy between the parties.

63. For these reasons, Hallmark respectfully request that the Court enter judgment declaring that the Reported Matters are entirely excluded from coverage by the Prior Acts Exclusion and that Sentia is not entitled to coverage under the Hallmark Policy with respect to those matters.

## COUNT II – DECLARATORY JUDGMENT

### (Non-Insured Capacity)

64. Hallmark incorporates by reference each and every allegation set forth in paragraphs 1 through 55 as though set forth fully herein.

65. Subject to its terms and conditions, Insuring Clause (B) provides coverage for **Insured Persons**, which is defined as "any **Executive** or **Employee** of an **Insured Organization** acting either in his or her capacity as such or in an **Outside Capacity**." (Ex. 1 at pg. 19 of 47).

66. **Executive** means any natural person who was, is or will be:

(A) a duly elected or appointed director, officer, in-house general counsel or member of an Advisory Board of any **Insured Organization** incorporated in the United States of America;

(B) a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; or (2) in-house general counsel of any **Insured Organization** formed as a limited liability company in the United States of America; or

///

(C) a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Insured Organization** incorporated, formed or organized anywhere in the world.

(*Id.* at pg. 6 of 47).

67. The Reported Matters allege the Underlying Defendants acted in capacities other than in their capacity as **Insured Persons**.

68. Specifically, Khanna, Angelo Lombardi, Sam Knapp, and Nicholas J. Slinde acted, in part, as directors or officers of Cura Partners and Nicholas J. Slinde, Benjamin C. Stoller, and Allan Goodman acted, in part, as outside counsel for Sentia and Cura Partners.

69. Accordingly, to the extent the Court finds the Prior Acts Exclusion does not bar coverage for the Reported Matters in their entirety, which it does, an allocation would be necessary between Sentia and Hallmark pursuant to Section IX. of the Crum & Forster Policy General Terms and Conditions. (*Id.* at pgs. 10-11 of 47).

## PRAYER FOR RELIEF

Plaintiff Hallmark Insurance Company respectfully requests that the Court enter the following relief:

A. As to Count I of the complaint, Hallmark requests that the Court enter a judgment declaring that the Hallmark Policy does not afford coverage for the Reported Matters;

B. As to Count II of the complaint, and in the alternative, Hallmark requests that the Court enter a judgment declaring that an allocation is necessary pursuant to the terms of the Crum & Forster Policy;

C. Award Hallmark its costs and reasonable attorneys' fees; and

D. Grant such other and further relief as the Court may deem appropriate.

## RESERVATION OF RIGHTS

The filing of this Complaint is not intended to and does not constitute a waiver of any of Hallmark's rights, remedies, and defenses under the Hallmark Policy and at law. Additional

conditions, limitations, and exclusions of the Hallmark Policy may exclude or limit coverage for the Reported Matters. Hallmark continues to reserve the right to raise all other terms, conditions, and exclusions as defenses to coverage for any claim made under the Policy where appropriate.

Dated: January 17, 2023

                                                Respectfully submitted,

                                                HALLMARK SPECIALTY INSURANCE COMPANY

                                                By:    /s/     *Jason Wright*

                                                Jason Wright (Oregon Bar No. 062168)
                                                Wright Law PDX
                                                1500 SW 1st Ave, Suite 730
                                                Portland, Oregon 97201
                                                (503) 295-6191
                                                *jason@wrightlawpdx.com*

                                                -and-

                                                David F. Cutter (*pro hac* admission to be sought)
                                                Emily R. Tripicchio (*pro hac* admission to be sought)
                                                BatesCarey LLP
                                                191 North Wacker Drive, Suite 2400
                                                Chicago, Illinois 60606
                                                (312) 762-3100
                                                *dcutter@batescarey.com*
                                                *etripicchio@batescarey.com*